## Augustus Hopkins v. Lorenzo D. Millard.

The plaintiff and defendant, and certain other parties, executed an instrument in writing, wherein it was agreed that each of said parties should contribute and pay to the plaintiff his relative proportion of the purchase money of a certain water privilege previously purchased by him on their joint behalf, to be ascertained and reckoned according to the fall at their respective mill estates, and should contribute and pay, in the like proportion, all expenses, damages, costs and charges, of raising, extending, lowering, securing and repairing the dams and improvements on the estate so purchased, and it was therein further agreed that an act of incorporation should be obtained, as soon as possible, and said property conveyed to the corporation thereby created, in which corpora-

tion the rights of the several parties to said agreement should be relatively the same as thereunder, namely, in proportion to the fall at their respective mill estates. *Held,* that the payment of taxes assessed upon the estate after the execution of such [agreement, but while the estate was in the hands of the plaintiff, was an expense for which all the parties to the agreement were liable, and that the defendant was bound to repay to the plaintiff his ratable propor- tion thereof.

In a suit by H. to recover of M. certain taxes paid by the former in behalf of the latter, the receipt of the tax collector held admissible, as pertinent evidence towards showing the payment of the said tax by H., although not sufficient of itself to establish his case without proof of the assessment.

A town clerk has no authority or power to certify what are the contents of his record, or what they are in substance or effect. As a certifying officer, he may make only *exact copies* from his records, and certify to their correctness as *copies.*

Therefore, a certificate from the town clerk of the town in which a tax is claimed to have been paid, to the effect that it appeared by the records of such town that a tax was, on the fifth day of April, 1865, ordered to be assessed, and tha on the 2d day of June, 1865, a tax of $71 was assessed on a certain estate to the plaintiff, is inadmissible to prove the making of such an assessment.

ASSUMPSIT, to recover the sum of twenty-five dollars and seventy-four cents, alleged to have been paid by the plaintiff for the defendant, as the defendant's proportional part of a town tax assessed against the Wallum Pond estate (so called) by the town of Burrillville.

The case was originally brought at a Justice's Court in the town of Burrillville, and judgment having been rendered by default in favor of the plaintiff, the defendant appealed to the Court of Common Pleas for the county of Providence, and the case was there tried at the June term, 1867, of the court, before Mr. Justice Shearman, sitting with a jury, and judgment hav- ing been rendered for the plaintiff for the sum of $27.40 and costs of suit, the defendant took certain exceptions to the rulings of the presiding judge, and to his charge upon the evidence, and also moved for a new trial, on the ground that the verdict was against the evidence.

The position of the case upon the evidence, and the excep- tions, are fully stated in the opinion ot the court.

*Van Slyck for the defendant.*

*B. N. & S. S. Lapham for the plaintiff.*

BRAYTON, C. J.   The verdict in this case is claimed to be against the evidence, because, as the defendant insists, there

was no evidence of any authority given by the defendant to the plaintiff, to pay any money for him, nor of any request to pay for him, and that no such authority or request was expressed or to be implied from the instrument put in evidence as proof upon this point.

This suit is for the defendant's proportion of a tax assessed upon certain real estates described in the instrument referred to and put in evidence. This instrument recites that the plaintiff and defendant, with others therein named, and who executed the same, being owners and interested in the waters of, and mill estates and privileges on, the Clear river, were desirous, and deemed it for their mutual benefit and interest, to obtain and have the right to control, regulate, draw off and shut back the waters of Wallum pond, and to raise, lower and extend the dams, ponds, trenches and outlets of said pond, and the factory pond, so called, connected therewith, and that to effectuate and secure these rights, the plaintiff had purchased the said rights, privileges and easements of the then owner, E. H. Marsh, for a price named in the agreement that day made between the plaintiff and said Marsh.

The subscribers to the instrument, therefore, mutually agreed to and with each other and with the plaintiff, to contribute and pay to the plaintiff the said purchase money proportionally, their several proportions to be ascertained and reckoned according to the fall at their respective mill estates, and to contribute and pay, in the like proportions, all expenses, damages, costs and charges of raising, extending, lowering, securing and repairing the dams and improvements on the estates named in said agreement with Marsh. They also agree to obtain as soon may be an act of incorporation, and that these estates purchased shall be conveyed to such corporation, the title of the corporation to be the "Clear River Reservoir Company," and to be for the purpose of improving the water power of said Clear river. In this corporation the right of the respective parties is to be relatively the same, namely, in proportion to the fall at the respective mill estates, one vote for every foot of fall.

By force of this agreement, the contracting parties became

interested in all the water, water rights and privileges, and estates, comprehended in this contract of sale between the plaintiff and Marsh, in proportion to their fall. They are to have the same interest in all the improvements contemplated to be made and provided for. They make themselves, and their respective mill estates, liable to pay in the same proportion all expenses of all such improvements. These improvements are contemplated to be made by the plaintiff, until they have become a body corporate.

The general purpose would seem to be, to provide that the plaintiff should be reimbursed for all moneys which, in holding the estate, in paying the purchase money, in making the contemplated improvements, he should be called upon or subjected to pay for the promotion of their interest. It is contrary to any apparent purpose, that while he should hold the estate, he should be subjected to any expenses for which he should not be reimbursed. He could not hold the estate and make the improvement without being subjected to taxes, as well as the proper expenses of the labor to be done. If taxes are assessed upon it, from necessity they must be paid, to save it from sale in whole or in part. The payment of these is fairly within the scope and purpose of this agreement. When assessed, it became the duty of the plaintiff to pay them, and, under this agreement, the like duty of this defendant, to repay his ratable proportion.

The verdict, then, was not against the evidence in the cause, for any such defect in the evidence as suggested, namely, that there was no evidence of any request to pay, for the consideration of the jury. Nor did the judge err in refusing to non-suit the plaintiff, because there was no such evidence, or because there was no evidence that defendant was liable to pay, or in refusing to charge that the written agreement furnished no such evidence, or in refusing to charge that for the want of such evidence the defendant was entitled to a verdict.

Whether the judge erred in charging the jury that they might interpret the contract by any parol evidence they might find in the case, it is not material now to consider, since upon this point they could not have found otherwise than they have, if they had

been otherwise instructed. It was, at least, correct to say that for anything in the agreement, they might find for the plaintiff.

The defendant, as another ground of exception, objects that certain evidence was improperly received against his objection at the time. The evidence offered was a receipt signed by J. F. Smith, and purporting to be a receipt by him as collector of taxes and for tax assessed on the estate, accompanied by evidence that the money was paid by the plaintiff, or by his agent for him. Assuming that the tax had been assessed upon the estate, and that Smith was collector, this evidence would be clearly necessary to prove the payment. It is not, therefore, irrelevant to the issue. It might well enough be said that without proof of the assessment, or that Smith was authorized to receive the tax, it would be insufficient to establish the plaintiff's case. It is pertinent evidence, and not the less so that other pertinent evidence is wanting, and the reception of it furnishes no ground of exception.

There was other evidence received against objection, the receipt of which is made a ground of exception. The plaintiff, to prove the regular assessment of the tax, offered in evidence a certificate under the hand of the town clerk of Burrillville, in which town the estate was situated, certifying that it appeared of record in the records of that town, that a tax was, on the 5th day of April, 1865, ordered to be assessed, and that on the 2d day of June, 1865, a tax of $71 was assessed on this estate to the plaintiff. The evidence was admitted against the defendant's objection.

Were it competent for the town clerk to make such a certificate, it could not be objected that the matter certified was not pertinent to the issue, and did not tend to prove that the tax was assessed. If it were competent for him to certify the contents of his records without a transcript of the record itself, this objection would fail, in law, to prove anything. If it were competent for a town clerk, without making any copy of his records, to certify what are their contents, what in fact they are in substance and effect, it could not be said that the evidence was not pertinent to the issue. But he has no such authority. He is not,

to this extent, a certifying officer, so as to make the certificate evidence of the fact certified. His power and his competency extends no further than, within the state, to make a copy of the record and to certify to the truth of the copy, and this is permitted to save the records being taken from their proper custody.

There being no competent evidence in the case of any assessment, a point material to the plaintiff's right to recover, the judge might have ordered a non-suit, or he might have directed the jury to return a verdict for the defendant for the same reason.

Having been submitted to the jury, and they having found for the plaintiff, when there was no evidence for him on a point material to his right to recover, the verdict is against the evidence, and must be set aside unless we can see that justice is nevertheless done in the case, and that a new trial will have the same result.

*New trial granted.*